Filed 7/1/22  Doctors Hospital of Manteca v. Kaiser Foundation Hospitals CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DOCTORS HOSPITAL OF MANTECA et al., | B313077 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCP03110) |
| v. | |
| KAISER FOUNDATION HOSPITALS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John P. Doyle, Judge. Affirmed.

Jones Day, Erica L. Reilley and James L. Poth for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Moe Keshavarzi, John T. Brooks and Matthew G. Halgren for Defendants and Respondents.

———————————————

OPINION REDACTED TO EXCLUDE
CONFIDENTIAL INFORMATION.
(Cal. Code Regs., tit. 15, § 3321, subd. (a);
see *People v. Landry* (2016) 2 Cal.5th 52, 73.)

Between December 2013 and February 2017, appellants Doctors Hospital of Manteca, Doctors Medical Center of Modesto, Los Alamitos Medical Center, Sierra Vista Regional Medical Center, Emanuel Medical Center, and Twin Cities Community Hospital (collectively, Tenet) provided emergency medical services to members of respondents Kaiser Foundation Hospitals and Kaiser Foundation Health Plan, Inc. (collectively, Kaiser). The parties dispute the adequacy of the reimbursement Kaiser made to Tenet for these emergency medical services. Tenet and Kaiser agreed to arbitrate Tenet's quantum meruit claim for the reasonable and customary value of its services, Kaiser's counterclaim seeking restitution of alleged overpayments made to Tenet, and Tenet's unfair competition law claim arising out of Kaiser's payment methodology.

At the conclusion of the arbitration, a panel of arbitrators denied Tenet and Kaiser relief on their respective claims. The panel concluded that neither side had discharged its burden of showing the reasonable and customary value of the emergency medical services in question. The panel also announced three independent reasons for rejecting Tenet's unfair competition law claim: (1) Tenet's challenge to Kaiser's methodology was not cognizable under the unfair competition law, (2) Tenet failed to show that the methodology violated a regulation that governs Kaiser's reimbursement obligations, and (3) the arbitrators should abstain from assessing whether Kaiser's reimbursement

formula complies with that regulation. Tenet filed a petition to vacate the final arbitral award, invoking a provision in the parties' arbitration agreement that empowered the trial court to conduct a de novo review for mistakes of law or legal reasoning. The trial court denied Tenet's petition and confirmed the award.

On appeal, Tenet fails to demonstrate that the panel made a prejudicial error of law or legal reasoning. First, the panel applied the correct legal standard in disposing of Tenet's quantum meruit claim. The record reveals that Tenet simply failed to persuade the arbitrators that primary leased network and non-par rates approximate the reasonable and customary value of Tenet's emergency medical services to Kaiser's members. Second, in contesting the award's resolution of the unfair competition law claim, Tenet erroneously describes the panel's rulings and raises factual challenges thereto. Lastly, any error made by the panel in adjudicating the unfair competition law claim was harmless because Tenet is not entitled to restitutionary or injunctive relief on that cause of action. We thus affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

We summarize only those facts that are relevant to our disposition of this appeal.

---

[1] Our factual and procedural background is based on the undisputed facts, the positions taken by the parties in their filings, and the final arbitral award. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "]; Standards of Review, *post* [noting that an arbitrator's award is

"Under the federal Emergency Medical Treatment and Active Labor Act [citation] and the Knox-Keene [Health Care Service Plan Act of 1975 (the Knox-Keene Act)], hospitals and other medical providers have a statutory duty to provide 'emergency [medical] services and care' to persons who are in 'danger of loss of life, or serious injury or illness.' [Citations.] Under the Knox-Keene Act, the health care service plan . . . must, within 30 or 45 days, reimburse the hospital or other medical providers for the 'emergency services and care provided to its enrollees' as to (1) all care necessary for 'stabilization' of the enrollee, and (2) for all poststabilization care the plan authorizes the hospital to provide. [Citations.] When the hospital or other medical providers have a contract with the plan, the plan must reimburse them for the services at the 'agreed upon contract rate.' [Citation.]" (*Long Beach Memorial Medical Center v. Kaiser Foundation Health Plan, Inc.* (2021) 71 Cal.App.5th 323, 329, 334 (*Long Beach Memorial Medical Center*).)

"However, when the hospital or other medical providers do *not* have a contract with the plan, the plan is statutorily obligated to reimburse the hospital or providers for the 'reasonable and customary value [of] the [emergency] health care services rendered.' [Citation.] . . . [¶] If a hospital or other medical provider believes that the amount of reimbursement it has received from a health plan is below the 'reasonable and customary value' of the emergency services it has provided, the hospital or provider may assert a quantum meruit claim against

---

presumed to be correct]; cf. *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling].)

the plan to recover the shortfall." (*Long Beach Memorial Medical Center*, *supra*, 71 Cal.App.5th at pp. 334–335.)

Tenet Healthcare Corporation owns the six for-profit California hospitals that are appellants to the instant proceedings.[2] Kaiser is a nonprofit health care services plan that is regulated under the Knox-Keene Act. The arbitral panel explained that "the heart of this dispute is the parties' disagreement about the fair market value of the emergency . . . services rendered to Kaiser members at [the] six . . . hospitals . . . during the period between December 2013 and February 2017." During that timeframe, "the parties were not in a contractual relationship, and no negotiated rates had been established." "Tenet claimed that Kaiser should reimburse the hospitals at approximately  of its billed charges," and there is evidence in the record that Kaiser paid between  and  of Tenet's billed charges.

The parties agreed to arbitrate their dispute. Pursuant to this agreement, the arbitral panel was charged with adjudicating Tenet's quantum meruit claim, Tenet's claim under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), and Kaiser's counterclaim for restitution, whereby it sought the return of alleged overpayments. The agreement provides in pertinent part: "The Final Award(s) shall be conclusive and binding and may be confirmed thereafter as a judgment by the Superior Court of the

---

[2] Tenet does not contest, and thus impliedly agrees with, Kaiser's assertions that Tenet Healthcare Corporation is the full name of the entity that owns the six hospitals, and that these hospitals are for-profit institutions. (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

State of California, subject only to challenge on the grounds set forth in . . . Code of Civil Procedure Section 1285 *et seq.*, or on the grounds that the Arbitrator(s) exceeded his/her/their powers by making a mistake of law or legal reasoning. The Parties agree that the court shall have jurisdiction to review, and shall review, all challenged findings of law and legal reasoning based on a *de novo* review."

A panel of three arbitrators heard the matter and issued a unanimous final award. In the award, the panel denied relief to Tenet and Kaiser on their respective quantum meruit and restitution claims on the ground that "neither party ha[d] carried its burden of proof," and thus the panel had "no basis[ ] on this record[ ] to find the specific fair market value of the services rendered at each hospital on the Disputed Claims." The panel also rejected Tenet's unfair competition law cause of action for several reasons that are addressed in greater detail in Discussion, part B, *post*.

Tenet initiated the trial court proceedings by filing a petition to vacate the final arbitral award. Kaiser filed a cross-petition to confirm the award. The trial court denied Tenet's petition and granted Kaiser's cross-petition. The trial court reasoned that "Tenet's objections [to the award] actually relate to factual errors, which the Court cannot review under either the subject arbitration agreement or Code Civ. Proc. § 1286.2." The trial court thereafter issued a judgment confirming the award, and Tenet timely appealed the judgment.

### STANDARDS OF REVIEW

Under the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.), the trial court must undertake one of the following courses of action if a petition to confirm an arbitral

6

award is filed: "confirm the award, . . . correct and confirm it, . . . vacate it, or . . . dismiss the petition."**3** (See *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 10–11.) "The trial court is empowered to correct or vacate the award, or dismiss the petition, upon the grounds set out in the pertinent statutes; '[o]therwise courts may not interfere with arbitration awards.' [Citations.]" (*Id.* at p. 11.)

"The grounds for vacating an award are set forth in [Code of Civil Procedure] section 1286.2; they are narrow. [Citation.] Among the listed grounds is that the arbitrators ' "exceeded their powers." ' [Citation.] The parties to an arbitration agreement may, as [Tenet] and Kaiser did, specify that arbitrators exceed their powers if they 'make [a] mistake[ ] of law or legal reasoning,' and that arbitrators' legal rulings are subject to de novo judicial review. [Citation.] 'If the parties constrain the arbitrators' authority by requiring a dispute to be decided according to the rule of law *and* make plain their intention that the award is reviewable for legal error, the general rule of limited review [of arbitration awards] has been displaced by the parties' agreement.' [Citation.]" (See *Kaiser Foundation Health Plan, Inc. v. Superior Court* (2017) 13 Cal.App.5th 1125, 1137, fn. 8; Factual and Procedural Background, *ante* [noting that the parties' agreement authorizes de novo review of challenged findings of law and legal reasoning].) Notwithstanding this modification of the general rule that arbitral awards are subject

---

**3** The parties impliedly agree that the CAA governs our review of the instant arbitral award. (See *Artal, supra,* 111 Cal.App.4th at p. 275, fn. 2 [holding that statements made in a litigant's brief may be construed as admissions against that party].)

to limited judicial review, we still must "defer to the factual . . . findings made by the arbitrator." (See *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405, 1416 (*Cotchett, Pitre & McCarthy*).)

"The party seeking to vacate an arbitration award bears the burden of establishing that one of the six grounds listed in [Code of Civil Procedure] section 1286.2 applies and that the party was prejudiced by the arbitrator's error." (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1106 (*Royal Alliance Associates, Inc.*); see also *Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 94 (*Rivera*) [" 'Every reasonable intendment is indulged to give effect to arbitration proceedings; the burden is on the party attacking the award to affirmatively establish the existence of error by a proper record.' [Citation.]"].) "Absent a showing of prejudice, even if error had been committed, the lower court [i]s required to affirm the award." (*Cothron v. Interinsurance Exchange* (1980) 103 Cal.App.3d 853, 860–861 (*Cothron*).)

" '[T]his court conducts a de novo review, independently of the trial court, of the question whether the arbitrator exceeded the authority granted him by the parties' agreement to arbitrate.' [Citations.]" (*Safari Associates v. Superior Court* (2014) 231 Cal.App.4th 1400, 1408.) Our obligation to review independently the trial court's judgment, however, does not excuse an appellant of its " 'burden of showing reversible error, and in the absence of such showing, the judgment or order appealed from will be affirmed.' [Citations.]" (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 104; *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492 [noting that this principle applies to " ' "an appeal from any judgment" ' "

8

and on " ' "[d]e novo review" ' "].) " '[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation[s] to the record' " and " 'pertinent legal authority . . . .' [Citation.]" (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).) Additionally, " '[i]f the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' [Citation.]" (*Estate of Sapp*, at p. 104.)

## DISCUSSION

Tenet asserts the trial court erred in denying its petition to vacate the final arbitral award because the panel of arbitrators made mistakes of law or legal reasoning in rejecting Tenet's quantum meruit and unfair competition law claims. As discussed in further detail below, Tenet fails to establish that the award should be vacated.

### A. Tenet Fails to Show the Arbitral Panel Made a Mistake of Law or Legal Reasoning in Rejecting Tenet's Quantum Meruit Claim

Tenet contends that the panel of arbitrators applied an erroneous legal standard to its quantum meruit claim. In particular, Tenet criticizes the panel's statement in the award that it had "no basis, on this record, to find the specific fair market value of the services rendered at each hospital on the Disputed Claims." Tenet argues that this passage indicates that, by concluding "there was not *enough* evidence of value, [the panel] must have been employing a legally erroneous higher evidentiary burden of proof." Tenet also maintains that the panel

9

seems to have erroneously "considered each category of evidence individually in evaluating whether it was sufficient to 'determine' the fair market value of Tenet Hospitals' services, instead of considering the wide range of evidence together." Additionally, Tenet suggests the panel erred in tacitly assuming that Tenet bore "the burden of proving *an* exact rate, or *a* precise mathematical formula, or *a* specific quantification of certain relevant factors . . . ." For the reasons discussed below, we reject each of these contentions.

1. *The panel did not employ a heightened burden of proof*

Regarding Tenet's argument that the panel imposed an erroneously stringent burden of proof on Tenet's quantum meruit claim, Tenet contends that "once the parties demonstrate the facts and circumstances surrounding the services at issue," the factfinder must determine the value of the medical services, regardless of whether "a party's evidence of reasonable value . . . *establish[es]* the specific value argued for by that party." Although Tenet's argument on this point is not altogether clear, Tenet seems to believe it discharged this burden by " 'fully describ[ing]' " the services in question. (Quoting *Spellmire v. Buttress & McClellan, Ltd.* (1935) 6 Cal.App.2d 550, 551 (*Spellmire*).) In support of its position, Tenet points out there are cases in which factfinders have made value determinations that were "*between* the evidentiary points offered by the parties."

None of the decisions Tenet cites in support of its characterization of the applicable evidentiary burden, however, establish that a factfinder is *required* to determine the value of the services at issue once a party has offered evidence describing them. Because the factfinder in each of those cases arrived at a

10

value determination,[4] these decisions had no occasion to consider whether, and under what circumstances, a factfinder would err if it did not make such a finding. (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 85, fn. 4 [" '[C]ases are not authority for propositions that are not considered.' "].)

In fact, Tenet's assertion that it needed to merely offer evidence describing its services in order to satisfy its evidentiary burden is at odds with *Children's Hospital Central California*, an authority which Tenet concedes articulates the relevant legal standard. *Children's Hospital Central California* explained that "[t]he burden is on the person making the quantum meruit claim to show the value of the services," and the touchstone of this analysis is "the price that would be agreed upon by a willing buyer and a willing seller negotiating at arm's length." (See

---

[4] (See *Sanjiv Goel, M.D., Inc. v. Regal Medical Group, Inc.* (2017) 11 Cal.App.5th 1054, 1057; *Moore v. Mercer* (2016) 4 Cal.App.5th 424, 427–428, 436; *Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1264–1265 (*Children's Hospital Central California*); *Culver Adjustment Bureau v. Hawkins Constr. Co.* (1963) 217 Cal.App.2d 143, 144; *Williams v. Dougan* (1959) 175 Cal.App.2d 414, 418–419; *Geisenhoff v. Mabrey* (1943) 58 Cal.App.2d 481, 482; *Spellmire, supra,* 6 Cal.App.2d at p. 551; *Kimes v. Davidson Inv. Co.* (1929) 101 Cal.App. 382, 383, 388; *Nylund v. Madsen* (1928) 94 Cal.App. 441, 442–443; *Galaxy Networks, Inc. v. Kenan Systems Corp.* (9th Cir. June 2, 2000) 225 F.3d 662 [2000 WL 714554, at pp. *1, *7]; *NorthBay Healthcare Group - Hospital Division v. Blue Shield of California Life & Health Insurance* (N.D. Cal. Apr. 2, 2019) 2019 WL 7938444, at p. *1 (*NorthBay II*); *Regents of the University of California v. Global Excel Management, Inc.* (C.D. Cal. Jan. 10, 2018) 2018 WL 5794508, at pp. *1, *23 (*Regents*).)

11

*Children's Hospital Central California, supra*, 226 Cal.App.4th at pp. 1274–1275.) The Court of Appeal further observed that "the facts and circumstances of the particular case dictate what evidence is relevant to show the reasonable market value of the services at issue . . . ." (*Id.* at p. 1275.) Examples of evidence relevant to the "reasonable and customary value of the services . . . . include the full range of fees that [the provider] both charges and accepts as payment for similar services," and "[t]he scope of the rates accepted by or paid to [the provider] by other payors . . . ." (See *ibid.*)

Given that "[s]pecific criteria might or might not be appropriate for a given set of facts" in a quantum meruit case (see *Children's Hospital Central California, supra*, 226 Cal.App.4th at p. 1275), evidence merely detailing the services in question (e.g., the type and duration of the emergency medical services) could—in a particular case—fall short of providing the factfinder with sufficient information to ascertain the price that a willing buyer would pay a willing seller in an arm's length transaction for the services. This conclusion is reinforced by our high court's observations that "pricing of medical services is highly complex," and that "the price of services depend[s] on the category of payer and sometimes on the particular government or business entity paying for the services." (See *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 562.)

Moreover, the final award demonstrates the panel employed the legal standard articulated in *Children's Hospital Central California.* According to the final arbitral award, Tenet argued that " " The panel agreed with Tenet that the contracted rates from commercial payors "do not represent the fair market

12

value of Tenet's services for Kaiser's members" because these commercial rates typically contain some form of "steerage,[5] exclusivity[,] and . . . other contracted-for benefits" that "are missing from the Kaiser/Tenet relationship." The panel reasoned that, under Kaiser's "integrated healthcare structure[,] . . . Kaiser seeks to repatriate its members after stabilization" and "offers no opportunity . . . to participate in any . . . means of providing a myriad of services to Kaiser members."

The panel observed that Tenet had not "quantified the value" of the contractual benefits that are "absent from Tenet's relationship with Kaiser," and that Tenet had instead "compar[ed] [Tenet's] relationship with Kaiser" to payors "who access the primary leased networks, or the non-par rates embedded in various commercial contracts." The panel noted that under Tenet's theory, entities paying primary leased network or non-par rates are analogous to Kaiser because such payors " 'are unwilling or unable to include the hospital in-network and allow the hospital to compete for the plan's business on the merits of the care they provide.' "[6] The panel rejected

---

[5] Although the panel did not explicitly define "steerage" in the award, the panel appears to have used the term as a shorthand to refer to "a health plan's ability to steer [patient] volume to a hospital."

[6] The panel did not further describe the "primary leased networks" and "the non-par rates" discussed in the final award. In its opening brief, Tenet claims that leased networks "reflect the rates that third-party companies . . . are able to negotiate with hospitals and 'rent' to health plans for a fee," and it appears Tenet is claiming that non-par rates are prices that "major health plans negotiate with hospitals that are excluded from a network . . . ." Tenet does not support properly these assertions,

Tenet's reliance on the primary leased network rates because the evidence suggested that Tenet's payors utilized these rates infrequently, and "Tenet has not accounted for reasons those payors would have accessed these high rates that were unrelated to lack of steerage or other factors in other commercial contracts." Similarly, the panel found that "Tenet's alternative reliance on non-par rates is . . . misplaced" because "there is no evidence of any buyer paying those rates to Tenet," meaning that "[t]he non-par rates, by themselves, cannot determine the fair market value of actual transactions that occurred with regularity between Tenet and Kaiser." Consequently, the arbitrators concluded that "the primary leased network and non-par rates do not reflect the fair market value of Tenet's services absent steerage, exclusivity or other benefits," and "Tenet . . . failed to discharge its burden of proving the reasonable or fair market value of its services rendered to Kaiser members on the Disputed Claims."

The award thus demonstrates that the arbitral panel found Tenet had failed to offer sufficient evidence to enable the panel to

---

however. One of Tenet's record citations is to an excerpt from the final award that does not substantiate Tenet's description of primary leased networks or non-par rates, and Tenet's other two citations correspond to briefing that it and Kaiser had submitted during the arbitration. (See *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 281, fn. 5 [holding that " 'unsworn averments in a memorandum of law prepared by counsel do not constitute evidence' "]; cf. *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590 (*Alki Partners, LP*) ["Citing points and authorities filed in the trial court is not appropriate support for factual assertions in a brief."].) In any event, Tenet's claim of error would fail even if it had substantiated these descriptions of primary leased networks and non-par rates.

determine "the price that ' "a willing buyer would pay to a willing seller, neither being under compulsion to buy or sell, and both having full knowledge of all pertinent facts." ' [Citation.]"  (See *Children's Hospital Central California, supra*, 226 Cal.App.4th at p. 1274.)  In particular, the panel found Tenet failed to account adequately for the value of steerage and other contractual benefits that are absent from its relationship with Kaiser. Although Tenet disagrees with that conclusion, the panel's analysis reveals that it identified and applied the correct legal standard.

Additionally, Tenet claims to have offered other evidence on reasonable value—i.e., "the contracted rates paid by other commercial payors, the amounts Kaiser paid , [and] Kaiser's own formula for determining the reasonable and customary value of services prior to October 2015 . . . ."[7]  Tenet seems to contend the panel's refusal to arrive at a reasonable and customary value determination based on this evidence also demonstrates the

---

[7] In the argument section of Tenet's opening brief, Tenet cites part of its factual summary for the proposition that Tenet also introduced evidence of "the amounts Kaiser agreed to pay *other hospitals* in negotiated contracts for comparable services . . . ."  (Italics added.)  This assertion fails, however, because the portion of Tenet's factual summary Tenet references does not discuss—let alone cite evidence concerning—the amounts Kaiser agreed to pay other hospitals.  (See *Alki Partners, LP*, *supra*, 4 Cal.App.5th at p. 590, fn. 8 [noting that the procedural requirements governing appellate briefing are "intended to enable the reviewing court to locate relevant portions of the record 'without thumbing through and rereading earlier portions of the brief' "].)

arbitrators employed an erroneously heightened evidentiary standard.  We disagree.

Regarding the contracted rates paid by other commercial payors, Tenet intimates the panel made an error of law or legal reasoning by declining to award any relief on the quantum meruit claim despite the panel's supposed "acknowledge[ment] that [Tenet's] evidence showed that the reasonable value of its services was, *at a minimum*, higher than the highest commercial contracted rates."  The portion of the final award that Tenet cites for this proposition, however, does not support their contention.

Moreover, the panel rejected Tenet's reliance on the fact that "" prior to late 2015.[8]  The arbitrators reasoned that "Kaiser was initially reluctant to involve its members in balance billing,[9] and even after 2009, it took some time to realize that the consistent and unilaterally determined increase in Tenet's . . .

[8]  This appears to be the evidence Tenet is referencing when it claims to have offered "the amounts Kaiser paid " and "Kaiser's own formula for determining the reasonable and customary value of services prior to October 2015 . . . ."  Insofar as Tenet intended to identify some other evidence it had submitted to the panel, Tenet has waived any argument relating thereto.  (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'The absence of *cogent* legal argument . . . allows this court to treat the contention as waived[,]' " italics added].)

[9]  The panel explained that "balance billing" is a practice in which a hospital "pursue[s] patients . . . for the balance of any charges not paid by their plan," and that, "in 2009, the California Supreme Court prohibited this practice, . . . at least with respect to California patients who are members of HMOs like Kaiser." (Citing *Prospect Medical Group v. Northridge Emergency Medical Group, Inc.* (2009) 45 Cal.4th 497, 507.)

rates required an updated methodology . . . ." To the extent Tenet argues the panel should have found the reasonable and customary value of Tenet's services based on the Kaiser previously paid to Tenet, that argument fails because Tenet makes no effort to show the panel's rejection of this evidence constitutes an error of law or legal reasoning. (See *Rivera, supra*, 54 Cal.App.5th at p. 94 [" '[T]he burden is on the party attacking the award to affirmatively establish the existence of error . . . .' "].)

2. *The panel did not consider each category of evidence in isolation*

Furthermore, Tenet's contention that the panel ran afoul of "*Children's Hospital*'s directive that it 'must consider the full range of relevant factors' " because the panel "considered each category of evidence in isolation" is without merit. Tenet points out the arbitrators found that the primary leased network and non-par rates were " '*not determinative* of' " and "*cannot determine*' " the fair market value of Tenet's services. When these excerpts of the final award are read in context, however, it becomes apparent the panel utilized this language to explain its finding that Tenet had not shown the primary leased network and non-par rates arose from transactions resembling the disputed claims.

And, although Tenet correctly notes the panel used similar language in disposing of Kaiser's counterclaim for restitution (i.e., the panel indicated that the fair market value is not necessarily " '*determined* by' " average contracted rates, volume is not the " '*ultimate indicator*' " of the reasonable value, and profit is " '*not determinative*' " of fair market price), these passages do not show the arbitrators failed to assess the evidence

17

as a whole.  Rather, the panel was simply stating that Kaiser had not shown that its "average of contracted rates" approach to calculating reasonable and customary value[10] "adequately account[ed] for . . . relevant factors such as varying degrees of steerage, network participation and other features that are present in other contracted relationships but absent from Tenet's relationship with Kaiser."  Accordingly, the record belies Tenet's characterization of the award.

> 3.  *The panel did not require Tenet to establish the reasonable and customary value of its services with precision*

Tenet's argument that the arbitral panel improperly charged Tenet with proving " '*an* exact rate, . . . *a* precise mathematical formula, or *a* specific quantification of certain relevant factors, such as steerage, exclusivity, and other benefits" is likewise unsubstantiated.  At no point did the panel state in its final award that Tenet was required to establish the precise value of its services.  The panel merely found that Tenet had not shown that the primary leased network and non-par rates "reflect the fair market value of Tenet's services absent steerage, exclusivity or other benefits."  Indeed, in rejecting a motion Tenet filed during the arbitral proceedings to challenge the panel's findings on the quantum meruit claim, the panel stated it did not "require Tenet to prove reasonable value with any mathematical precision or provide evidence of specific rates that are applicable," but instead "required . . . sufficient evidence . . . on which [the panel] could base an estimate of the value of Tenet's services."

---

[10] This approach is discussed in greater detail in Discussion, part B.1, *post*.

18

Thus, even assuming arguendo the governing burden of proof did not require Tenet to establish with precision the reasonable and customary value of its services, the record shows the panel imposed no such obligation on Tenet.

Moreover, the arbitrators' insistence that Tenet provide "sufficient evidence" on which it could "base an estimate of the value of Tenet's services" was not erroneous. Although we agree with Tenet that "the service being evaluated" in a quantum meruit claim "has *some value* ([and] not zero value)," it does not follow that the panel's ruling on that claim, in effect, rendered Tenet's services worthless. There is no dispute that Kaiser paid Tenet *something* for its services. Thus, by finding that Tenet did not satisfy its burden of proof on the quantum meruit claim, the arbitrators essentially concluded that Tenet failed to show it was entitled to any *additional* compensation. (See *Long Beach Memorial Medical Center*, *supra*, 71 Cal.App.5th at p. 335 ["As the plaintiff in a quantum meruit lawsuit, the hospital or provider bears the burden of establishing that the plan's reimbursement *was less than* the 'reasonable and customary value' of its services," italics added].) And the panel correctly pointed out that it was not required to "speculate, guess, or otherwise arbitrarily select an amount to award" in order to comply with the applicable legal standard. (See *McDonald v. John P. Scripps Newspaper* (1989) 210 Cal.App.3d 100, 104 [" 'It is fundamental that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.' "].)[11]

_____

[11] Likewise, we reject Tenet's apparent suggestion that the panel should have arbitrarily selected a valuation falling within the range of rates for emergency medical services reflected in the

19

In sum, Tenet does not establish that the arbitral panel made a mistake of law or legal reasoning in denying relief on Tenet's quantum meruit claim.[12]  Moreover, Tenet's assertion that the award did not "include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy"[13] fails because the panel's finding that Tenet did not satisfy its burden of proof resolved the merits of the quantum meruit claim.  (See *Hauser v. Ventura County Bd. of Supervisors* (2018) 20 Cal.App.5th 572, 576 [indicating that a finding that "a party has failed to carry [its] burden of proof" constitutes a "determination" that there is no "evidence of sufficient weight and credibility to convince the trier of fact"].)

## B.     Tenet Does Not Establish the Arbitral Panel's Rejection of the Unfair Competition Law Claim Amounts to Reversible Error

The unfair competition law "outlaws as unfair competition 'any unlawful, unfair or fraudulent business act or practice . . . .' "

---

parties' "substantial competing evidence"—i.e., "between  and  of billed charges . . . ."

[12]  Tenet states that "[t]he parties offered extensive, competing evidence on all the different value points considered sufficient in *Children's Hospital*, *Regents*, *NorthBay II* and *Moore*—e.g., the range of contracted rates, the highest contracted rate, the leased network rates, and the individual hospital evidence."  Inasmuch as Tenet purports to make an argument that is not already addressed in Discussion, part A, that argument fails because Tenet does not cogently raise it.  (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

[13]  (Code Civ. Proc., § 1283.4.)

(*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1240, 1253 (*Morgan*), quoting Bus. & Prof. Code, § 17200.) "Because the [unfair competition law] is framed in the disjunctive, a business practice need only meet one of the three criteria," also known as "prong[s]," "to be considered unfair competition. [Citation.]' [Citation.]" (*Morgan*, at pp. 1240, 1253; *Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 558.) With respect to the unlawful activity prong, " ' " ' "section 17200 'borrows' violations of other laws and treats them as . . . independently actionable." [Citation.]' " [Citation.]' [Citation.]" (*Law Offices of Mathew Higbee*, at pp. 553, 558.)

During the arbitration, Tenet asserted that Kaiser's methodology for determining the reasonable and customary value of Tenet's services violated the unlawful activity, fraudulent, and unfair prongs of the unfair competition law. The panel identified three independent reasons for denying relief on the unlawful activity prong: (1) Tenet failed to show that Kaiser's supposed violation of California Code of Regulations, title 28, section 1300.71, subdivision (a)(3)(B)[14] is redressable under the unfair competition law; (2) Tenet had not demonstrated that Kaiser's methodology fails to comply with section 1300.71, subdivision (a)(3)(B); and (3) the panel abstained from determining whether Kaiser's methodology comported with the regulation because "compliance is best left" to the agency responsible for implementing it, to wit, the Department of Managed Healthcare (DMHC). Tenet asserts that all three

---

[14] Undesignated regulatory citations are to title 28 of the California Code of Regulations.

21

conclusions "reflect legal error that require the award to be vacated."**15**

As discussed below, Tenet fails to demonstrate the arbitral panel's rulings on the unlawful activity prong amount to reversible error. First, Tenet has not shown the arbitrators made a mistake of law or legal reasoning in rejecting the merits of Tenet's challenge to Kaiser's payment methodology—i.e., item (2) above. Our conclusion in this regard renders harmless any error that the panel allegedly made in arriving at the conclusions identified in items (1) and (3) above, given that each of these three grounds independently supported the panel's rejection of Tenet's invocation of the unlawful activity prong. Second, Tenet does not demonstrate that even if Kaiser should have been held liable under the unlawful activity prong, Tenet would have been entitled to any relief on its unfair competition law claim. Because Tenet does not satisfy its burden of showing that any error was prejudicial, it is not entitled to an order vacating the final arbitral award. (*Royal Alliance Associates, Inc.*, *supra*, 2 Cal.App.5th at p. 1106 ["The party seeking to vacate an arbitration award bears the burden of establishing that one of the six grounds listed in [Code of Civil Procedure] section 1286.2 applies and that the party was prejudiced by the arbitrator's

_____

**15** The panel also rejected Tenet's invocation of the unfair and fraudulent prongs of the unfair competition law for various reasons (e.g., Tenet failed to prove that Kaiser's methodology "result[ed] in entrenched market power that is inimical to competition and competitors"). By failing to contest the panel's rulings on the unfair and fraudulent prongs, Tenet has waived any challenge thereto. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Rivera*, *supra*, 54 Cal.App.5th at p. 94.)

22

error."]; *Cothron, supra,* 103 Cal.App.3d at pp. 860–861 ["Absent a showing of prejudice, even if error had been committed, the lower court [i]s required to affirm the award."].)  For these reasons, we do not reach Tenet's complaints regarding items (1) and (3) above.

> 1.  *The arbitral panel did not make a mistake of law or legal reasoning in concluding Tenet failed to establish that Kaiser's methodology falls short of complying with section 1300.71, subdivision (a)(3)(B)*

The DMHC promulgated section 1300.71 to " 'clearly define terms relating to claim settlement and reimbursement [under the Knox-Keene Act], and provide procedures for plans and providers to prevent unreasonable delays in payment of provider claims.' " (See *Children's Hospital Central California, supra,* 226 Cal.App.4th at p. 1271.)  "[S]ection 1300.71[, subdivision ](a)(3)(B) defines ' "Reimbursement of a Claim" ' for noncontracted providers.  Such reimbursement means 'the payment of the reasonable and customary value for the health care services rendered.' [Citation.]  The reasonable and customary value is to be 'based upon statistically credible information that is updated at least annually' and takes six factors into consideration." (*Children's Hospital Central California,* at p. 1271.)

"These factors are:  '(i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case.' [Citation.]"

23

(*Children's Hospital Central California, supra*, 226 Cal.App.4th at p. 1271.) These six factors are sometimes referred to as "*Gould* factors" because they are derived from *Gould v. Workers' Comp. Appeals Bd.* (1992) 4 Cal.App.4th 1059. (See *Children's Hospital Central California,* at pp. 1271–1273, 1276.)

The panel explained that Kaiser's payment methodology has

The panel further observed that ▎ Further, the data used in Kaiser's payment methodology is annually updated.

Tenet's principal contention is that the panel committed "legal error" by arriving at two "wholly inconsistent" conclusions: (1) "Kaiser['s] . . . evidence was 'insufficient to show the fair market value of Tenet's services' "; and (2) Tenet had not shown that Kaiser's methodology violated section 1300.71, subdivision (a)(3)(B). Specifically, Tenet claims the fact "[t]hat the panel *could not* conclude that the amounts Kaiser . . . paid to Tenet . . . were reasonable and customary . . . means that Kaiser['s] . . . methodology *could not* have complied with the regulation[, ] as that methodology formed the foundation for Kaiser['s] . . . evidence." Tenet's argument rests on a false premise.

At no point did the panel find that Kaiser's methodology yielded reimbursements that were below the reasonable and customary value of Tenet's services. Recall that Kaiser had leveled a counterclaim against Tenet for restitution, asserting that "it ha[d] paid Tenet above what its experts say are the fair market rates for the six Tenet hospital[s] at issue." Specifically, Kaiser argued that " '[t]he reasonable value of hospital services is *determined* by contracted or negotiated rates accepted by or paid to a hospital[,]' " and Kaiser offered an "analysis [that] utilize[d]

24

an average of contracted rates" to show that it had overpaid Tenet. The panel disapproved of Kaiser's analytical approach because it did not "adequately account[ ] for other relevant factors such as varying degrees of steerage, network participation and other features that are present in other contracted relationships but absent from Tenet's relationship with Kaiser." It was in this context that the panel remarked: "Kaiser's showing . . . is insufficient to show what is the fair market value of such services on the Disputed Claims." A review of the final award thus reveals that the alleged "inconsistency" underlying Tenet's claim of error is nothing more than a mirage.

In a cursory fashion, Tenet also raises several arguments in an effort to show the panel's rejection of Tenet's challenge to Kaiser's methodology was "wrong as a matter of law." Tenet claims, without any supporting analysis, that Kaiser's imposition of " . . . renders the entire methodology not statistically credible, as the law requires." Similarly, Tenet baldly asserts that Kaiser violated section 1300.71, subdivision (a)(3)(B) by failing to "update *its methodology* 'at least annually' " (italics added), even though the regulation simply states that the "statistically credible *information*" upon which the payment is based must be "updated at least annually . . . ." (See § 1300.71, subd. (a)(3)(B), italics added.) The panel concluded that the regulation requires only that the underlying hospital data used in the payment methodology—and not each and every aspect of the formula (e.g., )—be updated annually. Because Tenet does not explain why this ruling is erroneous or further elaborate on why it believes these aspects of Kaiser's methodology contravene the regulation, its arguments fail. (See *Hernandez, supra*, 37 Cal.App.5th at p. 277

25

[" 'We are not bound to develop appellants' arguments for them.' "].)

Lastly, Tenet insists that "Kaiser['s] . . . methodology cannot possibly incorporate the second, third or fourth *Gould* factors" because the used in the formula " regardless of their nature (inpatient, outpatient, emergency, etc.), context (contracted, non-contracted) or geography . . . ." The panel acknowledged that Tenet had raised this argument during the arbitral proceedings, but nonetheless concluded that Kaiser presented evidence that both of its methodology "consider each *Gould* factor." It thus appears that Tenet is actually leveling a factual challenge to the award that is beyond the scope of our review. (See *Cotchett, Pitre & McCarthy*, *supra*, 187 Cal.App.4th at p. 1416 ["We review the trial court's ruling de novo, but defer to the factual . . . findings made by the arbitrator."].) As Tenet does not explain why this appellate claim nonetheless concerns a mistake of law or legal reasoning, we do not address it further. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

In conclusion, Tenet has failed to discharge its burden of establishing that the arbitral panel made an error of law or legal reasoning in adjudicating the merits of the unfair competition law claim.

2. *Even if the panel had erred in rejecting Tenet's unfair competition law claim, any such error was harmless*

"The unfair competition law affords two types of relief—namely, restitution and injunctive relief. [Citations.] . . . . [¶] As applied to a violation of the Knox-Keene Act's requirement for reimbursement of emergency medical services, the restitution available under the unfair competition law . . . . . is indistinguishable from the award [health care providers] would

26

receive through their quantum meruit claim." (See *Long Beach Memorial Medical Center*, *supra*, 71 Cal.App.5th at pp. 342–343.) In the award, the arbitral panel noted that "[a]t final argument on liability" on the unfair competition law claim, "Tenet confirmed that it d[id] not seek injunctive relief" or the reasonable and customary value of its services, and that Tenet represented it "had other theories that would be unveiled" if it established that Kaiser was liable on this cause of action.

Kaiser maintains that even if the panel erred in rejecting Tenet's unfair competition law claim, that error is harmless because "Tenet . . . failed to prove the reasonable value of its services, which is all it would have been entitled to as restitution."

In its reply, Tenet does not contend that, had it shown that Kaiser violated the unfair competition law, Tenet would have been entitled to injunctive relief or any form of restitution other than the reasonable and customary value of its services. Rather, Tenet simply claims the arbitrators' rulings on the unfair competition law claim were not harmless because the panel made a "legal error" in concluding Tenet fell short of meeting its burden of establishing the reasonable and customary value of the services at issue. For the reasons we explained in Discussion, part A, *ante*, however, we have already rejected that claim of error. Because Tenet fails to show it could have obtained any form of relief on its unfair competition law claim, Tenet was not prejudiced by the panel's award denying recovery thereon. (Cf. *Long Beach Memorial Medical Center*, *supra*, 71 Cal.App.5th at pp. 333, 341–344 [holding that a trial court's erroneous pretrial dismissal of an unfair competition law claim seeking the reasonable and customary value of emergency medical services

27

was harmless because it was entirely duplicative of a quantum meruit claim that proceeded to trial and resulted in a defense verdict].)

## DISPOSITION

The judgment is affirmed.  Respondents Kaiser Foundation Hospitals and Kaiser Foundation Health Plan, Inc. are awarded their costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



MORI, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.